WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marc Stuart Goldman,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-23-02527-PHX-SMB<br><br>**ORDER** |

At issue is the denial of Plaintiff Marc Stuart Goldman's Application for Social Security Disability Insurance benefits by the Social Security Administration ("SSA") under the Social Security Act (the "Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial and an Opening Brief (Doc. 14). Defendant Commissioner of Social Security (the "Commissioner") filed a Response Brief (Doc. 16). The Court has reviewed the parties' briefs, the Administrative Record (Docs. 8–11 ("AR")), and the Administrative Law Judge's ("ALJ") decision (AR 1281–1299), and will affirm the ALJ's decision.

**I.    BACKGROUND**

Plaintiff filed applications for disability, disability insurance benefits, and supplemental security income on June 4, 2018, alleging disability commencing on January 17, 2018. (AR 274–88.) The Commissioner denied the claim on September 26, 2018, and denied Plaintiff's request for reconsideration on March 28, 2019. (AR 182–89, 196–201.) Thereafter, Plaintiff sought review from an ALJ, who upheld the denial of benefits on May 26, 2020. (AR 13–31.) Plaintiff appealed the ALJ's unfavorable decision, and on

December 29, 2020, the Social Security Appeals Council denied the request for review and affirmed the ALJ's decision. (AR 1–7.) Plaintiff then filed in this Court, which entered judgment and ordered the case remanded for further proceedings pursuant to the parties' joint motion to remand. (AR 1421–24); *Goldman v. Comm'r of Soc. Sec. Admin.*, CV-21-00328-PHX-JAT (D. Ariz. Sept. 3, 2021), ECF No. 18.

On remand, the same ALJ published an unfavorable decision. (AR 1278–1310.) The ALJ used the five-step sequential evaluation process pursuant to C.F.R. §§ 404.1520, 416.920. (AR 1284–99.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 17, 2018. (AR 1284.) At step two, the ALJ found that Plaintiff suffered from medically determinable severe impairments, including: mixed personality disorder and substance abuse disorders (methamphetamine and cannabis). (AR 1284.) At step three, however, the ALJ found that, even with the drug abuse, Plaintiff did not have a listed impairment that met the severity of an impairment listed in 20 C.F.R. Part 404. (AR 1284–86.) Based on the impairments and Plaintiff's substance abuse disorder, the ALJ assessed Plaintiff as retaining the residual functional capacity ("RFC") to perform a full range of exertional work with some limitation. (AR 1287.) Specifically, the ALJ found that:

> [T]his individual can understand, remember and carry out simple, routine tasks. He is frequently able to interact with supervisors, but never interact with coworkers and the public. He can make simple work-related decisions and tolerate occasional changes in a routine work setting. This individual will miss four or more days per month and be off task 10 percent of the workday.

(AR 1287.) At steps four and five, the ALJ determined that Plaintiff's RFC precluded his return to perform his past relevant work and that no jobs existed in significant numbers that Plaintiff could perform while affected by his substance abuse. (AR 1292.) Thereafter, the ALJ found that if Plaintiff's substance abuse stopped, then he would not have an impairment that significantly limited his ability to perform basic work-related activities. (AR 1293.) Finally, the ALJ concluded that substance use disorder was a contributing factor material to the determination of disability and thus Plaintiff has not been disabled under the SSA. (AR 1299.)

Plaintiff did not seek review with the Appeals Council, and therefore the ALJ decision became the final decision of the Commissioner. (AR 1279); 42 U.S.C. § 405(h). Plaintiff then filed the instant Complaint, seeking review from this Court pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step

four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.   DISCUSSION

Plaintiff asserts the following challenge to the ALJ's decision: "The ALJ's failure to find a severe mental impairment in the absence of substance use lacks the support of substantial evidence and rests on legal error." (Doc. 14 at 5.) Plaintiff contends that both the evidentiary and legal error resulted when the ALJ relied only upon the medical expert's opinion to find that Plaintiff's substance use disorder was a contributing factor material to the disability determination. (Doc. 14 at 8.) According to Plaintiff, relying solely on the medical expert to make that finding violates Social Security Ruling ("SSR") 13-2p(7)(b), which prohibits "adjudicators [from relying on] exclusively on medical expertise." (*Id.*) Plaintiff also argues that, aside from the medical expert, the other medical and testimonial evidence on record does not support the ALJ's disqualifying determination. (*Id.* at 9–16.)

In response, the Commissioner argues that ALJ properly considered the medical expert testimony, alongside other limited medical evidence, to find Plaintiff's multiple personality disorder was non-severe when not under the effect of methamphetamine and cannabis. (Doc. 16 at 3–4.) The Commissioner highlights that even if the Court could reasonably reach a different outcome, the standard on review simply requires the Court to determine whether the ALJ's determination is supported. (*Id.* at 3 (citing *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020).)

An ALJ must not find a claimant to be disabled when substance abuse is a contributing factor material to the determination. 42 U.S.C. §§ 423(d)(2)(C). To be sure, evidence of substance use does not in itself establish materiality. SSR 13-2p(8)(b).

Instead, the SSA has explained that the record must include evidence that establishes an individual with a co-occurring mental disorder would not be disabled in the absence of drug addiction. SSR 13-2p(7)(b). Here, the medical expert diagnosed a mixed personality disorder and two substance abuse disorders. (AR 1328–29.) This therefore means that Plaintiff's mixed personality disorder is co-occurring with his substance abuse disorders. *See* SSR 12-2p(7)(b).

When opining on Plaintiff's disorders in the hearing on remand, the medical expert stated that "it is difficult to discern whether it is symptoms of a personality disorder, which is what I think is the primary problem, causing him not to show up, or substance abuse." (AR 1332.) In response to the ALJ's inquiry of whether "substance abuse [is] a symptom of personality disorder," the medical expert testified that:

> It can be one of the things, in which people engage . . . for example, in a borderline personality disorder, engaging in activities that have a propensity for harm is one of the criteria . . . that can mean self-injury or it can mean substance use. So, we can fit it in with a personality disorder, and having worked for 30 years in prison, I would tell you that it's kind of bidirectional. Every person with a substance use problem engages in some antisocial behavior . . . . And every person with an antisocial personality disorder has probably engaged in substance use at some point.

(AR 1338–39.) Though, the medical expert would struggle to conclusively say that Plaintiff's drug addiction was a result of his personality disorder because "we don't have a specific sober period [to] look at." (AR 1329.) Then, using education, experience, and training, the medical expert testified that, in the absence of substance abuse, Plaintiff would not have a qualifying disability. (*See* AR 1329.)

Plaintiff's chief position is that his personality disorder on its own begets a disability finding. Therefore, given that the medical expert could not conclude that sobriety would render Plaintiff's co-occurring personality disorder non-severe, the ALJ's reliance on the expert's opinion to establish materiality was error. Solely relying on such testimony may be error, however, the ALJ's decision cites other medical evidence that underpin the materiality finding. For example, the ALJ also relied on evidence that tended to show that Plaintiff's mental health improved when he was not using methamphetamine and cannabis.

(AR 1294–95, 909, 2206–07, 2720–21.) The ALJ also cited hearing testimony and medical evidence showing that, in the absence of substance abuse, Plaintiff had no indication of significant anxiety or paranoia, had drastically improved mood at five and seven months sober, and that Plaintiff, "for the first him in [his] life" had "minimal suicidal ideation" and a "decreased feeling of rage. (AR 909, 1294–95, 1815–16, 2008–10, 3073.)

To be sure, Plaintiff challenges the ALJ's reliance on those medical records as well, attacking them as misconstrued or unsupported by other parts of the record. (*See* Doc. 14 at 9–16.) First, Plaintiff argues that the ALJ afforded improper weight to improvements in Plaintiff's mood in June 2018, as it resulted from a change of medication, and not from sobriety. (*Id.* at 9.) At that time, Plaintiff reported a period of sobriety and that his new medicine resulted in "minimal suicidal ideation" and "decreased periods of rage" but that he occasionally suffered from "anger issues . . . and difficulty in interpersonal relationships." (AR 909.) According to Plaintiff, his still-existing issues of rage and anger nevertheless constituted a continued severe mental impairment without substance abuse. (Doc. 14 at 9.) This argument, however, does not stand up to scrutiny. Evidence showing that medication and sobriety were not the panacea Plaintiff hoped for does not otherwise preclude the ALJ from finding that, based on the whole record, treatment greatly improved his condition and rendered his disability non-severe. Indeed, Plaintiff's own statements suggest that his sobriety and medication resulted in a drastic change in his struggles with suicidal thoughts, rage, and the ability to interact with others, which would support a non-severe finding. (AR 909; *see also, e.g.*, AR 2581 (noting, in 2019, Plaintiff went out into the community to attempt to initiate a ballot measure on gun reform).)

Second, Plaintiff relies on a November 2021 statement from his therapist, in which she states that Plaintiff's periods of stability are short lived. (AR 2660.) The ALJ ascribed partial persuasiveness to this opinion, but otherwise found it to be inconsistent with the medical records during periods of sobriety. (AR 1296.) Specifically, the ALJ noted that when Plaintiff is sober, he exhibited decreased mood disturbances. (AR 1296.) As noted, the ALJ cites to medical records that show Plaintiff's improvement with respect to anger

issues and interacting with others. (AR 1116, 1285, 1295, 2010, 2660 (showing that Plaintiff rides the bus, attended addition program meetings, shopped, cared for his daughter, and attempted to start a ballot measure on gun reform)); *see also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (finding that evidence of claimant's daily activities, including shopping, attending church, and walking, undermined claims of panic attacks and inability to be around others). Thus, Plaintiff's attempt to utilize this letter to discredit the other substantial evidence the ALJ relies upon is unavailing.

Third, Plaintiff contends that treatment notes during Plaintiff's several and separate periods of sobriety document symptoms despite lack of substance abuse. (Doc. 14 at 9–11.) The 2018 notes report that Plaintiff had been sober for approximately eight months. (AR 1998.) Additionally, the 2018 notes indicate with an "X" mark that Plaintiff hallucinates and further explaining that they are "auditory." (AR 1200.) The 2019 notes report Plaintiff having been sober for seven months, and that his mood has "drastically increased." (AR 1815–16.) Those notes also detail Plaintiff's on-again-off-again relationship with his medications, illicit drug use, and his attempts to move into permanent housing. (AR 1815.) Finally, the notes state Plaintiff "did not exhibit any delusions" and "denied any auditory, visual, olfactory, tactile, gustatory hallucinations." (AR 1810, 1816.) And, in July 2019, Plaintiff reported he stopped his medications and had no plan to kill himself, but ruminated on ways to maim himself to get his disability claim approved. (AR 2614.)

After reviewing the record and the ALJ decision, it becomes clear that Plaintiff's arguments concern fundamental disagreements with the interpretation of the substantial evidence and less about whether the ALJ decision was based upon substantial evidence. Again, the Court's inquiry here is to determine whether the substantial evidence supports the ALJ's decision, not whether this Court would rule differently. *See Ford*, 950 F.3d at 1156 ("Although [plaintiff] argues that the ALJ failed to recognize the inherently variable nature of mental illness, the court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."). Here, Plaintiff

essentially concedes at every turn that his condition improved during periods of sobriety, but that his condition nevertheless required a disability finding. (*See* Doc. 14.) Considering those records, the ALJ found that Plaintiff, although symptomatic, would otherwise have a non-severe personality disorder when not afflicted with drug use disorders. Put another way, Plaintiff's drug use was material to the disability determination because when sober, Plaintiff could and did engage in activities that belie a disability finding. (*See, e.g.*, AR 1116, 1285, 1295, 2010, 2660 (showing that Plaintiff rides the bus, attended addition program meetings, shopped, cared for his daughter, and attempted to start a ballot measure on gun reform)); *see also Molina*, 674 F.3d at 1113 (finding that evidence of claimant's daily activities, including shopping, attending church, and walking, undermined claims of panic attacks and inability to be around others). Therefore, the ALJ did not err when he found that Plaintiff's personality disorder on its own would be non-severe if Plaintiff abstained from using methamphetamine and cannabis.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED affirming** the ALJ's August 22, 2023 decision.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment consistent with this order and terminate this action.

Dated this 20th day of March, 2025.

Honorable Susan M. Brnovich
United States District Judge